UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at ASHLAND
CASE NO. _____

| | |
|---|---|
| NATIONAL CITY BANK, ) | |
| ) | **Electronically Filed** |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MERCHANT MANAGEMENT ) | |
| SYSTEMS, INC., ) | |
| ) | |
| Serve: Christopher A. Dawson, ) | |
| Registered Agent ) | |
| 1813 Argillite Road ) | |
| Flatwoods, KY  41139 ) | |
| ) | |
| ) | |
| KENTUCKY FARMERS BANK ) | |
| CORPORATION ) | |
| ) | |
| Serve: Joe H. Allen, Registered Agent ) | |
| 6313 U.S. Route 60 ) | |
| Ashland, KY  41102-8640 ) | |
| ) | |
| and ) | |
| ) | |
| BRIAN PATRICK REED ) | |
| ) | |
| Serve: Brian P. Reed ) | |
| 1200 Corporate Court ) | |
| Ashland, KY  41102 ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Defendant, National City Bank ("National City"), by counsel, for its Complaint against Merchant Management Systems, Inc. ("MMS"), Brian Patrick "Pat" Reed ("Mr. Reed"), and Kentucky Farmers Bank Corporation ("KFB"), states as follows:

**NATURE OF THE ACTION**

1. This is an action against MMS and Mr. Reed for intentional and negligent misrepresentation and against MMS for declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion and constructive trust. On or about April 2009, MMS established a Prefund Automated Clearinghouse Settlement Account (the "Account") with National City for the purpose of managing electronic financial transfers on behalf of its customers and to process large volumes of credit and debit transactions. After establishing the Account, MMS and Mr. Reed provided National City with false debit instructions to induce National City to credit a separate account held by MMS at KFB. By providing false debit instructions to National City, MMS was able to wrongfully divert $226,060.20 from National City (the "Funds"). Upon information and belief the Funds are held by KFB today.

2. KFB is joined as a party to this action to the extent that it maintains custody of Funds wrongfully possessed and transferred to it by MMS and Mr. Reed. KFB's possession of these Funds resulted from the improper conduct of MMS and Mr. Reed, and National City requests this Court to impose a constructive trust over all of the Funds in KFB's possession, and to order KFB to immediately freeze and hold all assets and accounts of MMS and Mr. Reed until the Funds can be located and secured by Order of this Court. National City requests an immediate writ of possession and prejudgment attachment to secure National City in the collection of the judgment that should issue at the conclusion of this action.

**PARTIES, JURISDICTION AND VENUE**

3. National City is a national banking association organized and existing under federal law and regulations issued by the Office of Comptroller of Currency. National City's

main office is in Ohio. Accordingly, pursuant to 28 U.S.C. § 1348, National City is a citizen of Ohio.

4. MMS is a corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business in Boyd County, Kentucky. Thus, pursuant to 28 U.S.C. § 1332(c), MMS is a citizen of Kentucky.

5. KFB is a corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business in Boyd County, Kentucky. Thus, pursuant to 28 U.S.C. § 1332(c), KFB is a citizen of Kentucky.

6. The amount in controversy in this action exceeds $75,000.

7. Pursuant to 28 U.S.C. § 1332(a)(1), this Court is vested with original jurisdiction over this matter.

8. As both defendants reside in this district and a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this district, this Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(a).

## FACTS

9. Automated Clearinghouse ("ACH") accounts are maintained for the electronic processing of voluminous credit and debit transactions, which typically originate from the bank customer in batches. These electronic transfers are accomplished when the bank customer uploads batches containing listings of routing and account numbers and amounts into the bank's computer system, with directions that the bank either (1) electronically transfer funds from the ACH account to other accounts ("Credits"), or (2) electronically retrieve and receive funds from other accounts into the ACH account ("Debits"). As more fully described below, MMS used its ACH Account to convert $226,020.60 from National City. Despite National City's repeated

requests that this alleged "mistake" be immediately corrected, MMS and Mr. Reed have failed to do so.

10. According to its website, MMS is an electronic payment provider. It purports to offer electronic payment services to small businesses, including credit and debit card processing, check conversion, gift and loyalty card processing and electronic benefits transfers. MMS uses an ACH account to manage these payment services on its clients' behalf.

11. On April 15, 2009, MMS and National City executed a Master Treasury Management Services Agreement and MMS executed Certified Treasury Management Resolutions (collectively the "Account Agreement"). Pursuant to the Account Agreement, National City agreed to maintain an ACH account for the use of MMS.

12. As part of its Account Agreement, MMS "agree[d] to maintain available funds on deposit at all times in the [Account] sufficient in amount to cover in full all outgoing funds transfers which are effected in connection with" the Account. MMS promised that it would maintain enough funds to satisfy all Credits directed by MMS, whether by traditional deposits or corresponding Debits to the Account.

13. MMS further agreed that "[i]n the event [it] fail[ed] to maintain available funds on deposit and/or fail[ed] to make a payment or reimbursement when due, … National City may refuse to effect any outgoing funds transfers from the applicable Account … ."

14. MMS's President and Chief Operating Officer Mr. Reed executed the agreement on behalf of MMS, and reported to National City that MMS was switching its ACH business from KFB to National City.

15. Mr. Reed and MMS used the Account until early July 2009. During this time, MMS never exceeded $25,000 in daily ACH activity.

16. Beginning July 14, 2009, MMS and Mr. Reed began directing Credits in batches from its Account that greatly exceeded its previous Account activity. For example, these defendants created three batches of many separate account transfers effective July 14, 2009 in the amounts of: (A) $74,079.75; (B) $151,018.10; and (C) $186,798.78. A fourth batch was created for many separate accounts effective July 15, 2009 in the amount of $128,506.34. A fifth batch was created for many separate accounts effective July 16, 2009 in the amount of $49,253.97.

17. Finally, MMS and Mr. Reed created a sixth batch, effective July 14, 2009, in the amount of $255,566.58. However, this batch differed from the large batches detailed above in a variety of ways. This batch contained only two Credits, one to an individual checking account in the amount of $150, and a second to a checking account titled "MMS" in the amount of $255,416.58.

18. At the same time that Mr. Reed and MMS directed these large batches of Credits to the Account, Mr. Reed and MMS correspondingly directed large batches of Debits to National City for the purported funding of the Credits.

19. On the morning of July 15, 2009, National City contacted Mr. Reed to advise him that his recent directives exceeded the prefunding limits of the Account. During that call, Mr. Reed asked National City to grant exception and honor these transactions even though they greatly exceeded the prefunding limits of the Account, and even though National City had not yet been able to fully process and receive the corresponding Debits into the Account. Mr. Reed assured and promised National City that the Credits would be covered by the Debits. Based upon Mr. Reed's representations and assurances, National City honored the request and performed the Credits.

20. Mr. Reed's representations and promises to National City turned out to be false when made. When National City processed the batch of Debits which corresponded to the sixth large Credit directive totaling $255,566.58, more than seventy-five percent of the Debit directives provided to National City by Mr. Reed and MMS were rejected for various reasons, including but not limited to: (1) the account number did not exist; (2) the account number was frozen; (3) the account holder did not authorize the Debit; or (4) the account to be debited had insufficient funds to cover the directed transaction.

21. In fact, several of the account numbers provided by Mr. Reed and MMS corresponded with other National City accounts that had been closed since 2008.

22. Ultimately, following National City's unsuccessful efforts to collect the Debits as directed by Mr. Reed and MMS, the Account was overdrawn by $226,020.60. This overdraft was created by the transfer and Credit to the MMS account at KFB, which was founded on the negligent or intentional misrepresentations of Mr. Reed and MMS, and in violation of the Account Agreement with National City.

23. When Mr. Reed and MMS did not correct the overdraft, National City contacted Mr. Reed on July 21, 2009 to advise him that the Account was overdrawn and that he must deposit money into the Account to cover the deficiency.

24. MMS and Mr. Reed did not seek to address the overdraft, and National City again contacted Mr. Reed on July 23, 2009. At that time, Mr. Reed advised National City that he did not want the bank to contact or communicate with any other approved signatory on the Account, and that National City should contact his legal counsel, Christopher Dawson, with further questions. Mr. Reed promised to contact National City again at 4 pm on July 23 after further investigation, but he failed to do so.

25.     Because the Account was significantly overdrawn and MMS and Mr. Reed had failed repeatedly to fulfill promises, National City suspended further activity in the Account on July 24, 2009.

26.     Later on July 24, 2009, Mr. Reed explained to National City that the problems with the Debits and resulting overdraft were caused by a "formatting error." Mr. Reed promised to cure the problem by contacting National City at 11 am on Monday, July 27, 2009, and submit a new batch of Debits with corrected account numbers.

27.     National City requested permission from MMS to reverse the Credit previously posted to MMS's account at KFB and to bring the Account current. Mr. Reed refused National City's reasonable request and directed National City to not communicate with KFB about the transfer.

28.     Despite his promise, Mr. Reed failed to contact National City at 11 am on July 27, 2009. National City went to MMS's offices later that afternoon to attempt to address the matter. At that meeting, Mr. Reed promised National City's banking manager, Michael Corwin, that Mr. Reed would provide a corrected batch of Debits which would purportedly allow National City to collect money from designated accounts sufficient to cover the overdraft.

29.     Although Mr. Reed finally submitted a new batch of Debits on July 28, 2009, the new listing contained many of the same account numbers previously submitted by Mr. Reed, which had already been rejected as closed, frozen, unauthorized, or containing insufficient funds. Although Mr. Reed did submit new account numbers, the so-called "corrected" list was highly suspect and incorrect, and National City concluded that it could not process it under NACHA's participating guidelines. For example, National City discovered that the "corrected" list of Debits consisted of twelve (12) new account numbers that corresponded with accounts at National City that had been closed since 2008.

30. Undersigned counsel for National City sent a demand letter to Christopher Dawson, reported counsel for MMS, on the morning of July 30, 2009, requesting that Mr. Dawson contact her and that MMS make a deposit into the account by the end of the day to make the account whole.  Undersigned counsel called Mr. Dawson on the afternoon of July 31, 2009, and sought a return call.

31. Finally, on Monday, August 3, 2009, undersigned counsel sent Mr. Dawson another letter via telecopy, seeking to clarify whether he was acting as MMS's counsel in this matter, and offering to allow MMS and Mr. Reed one last chance to "correct" the failed Debit batch.

32. As of the time of this filing, neither Mr. Dawson nor Mr. Reed has responded to any of undersigned counsel's communications.

33. The false statements and processing directives for the Account by MMS and Mr. Reed, together with their failed promises and conduct is highly irregular and inconsistent with conduct of an electronic funds processing agency that is conducting its business honestly and in good faith.

## COUNT I
## DECLARATORY JUDGMENT (MMS)

34. National City incorporates by reference the allegations previously set forth in this Complaint.

35. The Account Agreement requires MMS "to maintain available funds on deposit at all times in the [Account] sufficient in amount to cover in full all outgoing funds transfers which are effected in connection with" the Account.  The Account Agreement defines the terms and sets forth the rights and obligations of the parties, including but not limited to MMS's obligation to maintain sufficient funds in the Account at all times to maintain a positive balance.

8

36. A dispute has arisen concerning the parties' rights and obligations under the Account Agreement, including the obligation of MMS to maintain a positive balance in the Account. MMS has breached the Account Agreement by engaging in the course of conduct described above and causing the Account balance to be negative, as described in this Complaint.

37. A dispute has arisen concerning MMS's commission of intentional or negligent misrepresentation and conversion, as described in this Complaint.

38. An actual case and controversy exists between National City and MMS.

39. Accordingly, National City respectfully requests that this Court enter a declaratory judgment on an expedited basis, pursuant to 28 U.S.C. § 2201, declaring that MMS is obligated to maintain a positive balance in the Account, that MMS was prohibited by the Account Agreement from engaging in the course of conduct described above and causing the Account balance to fall below zero, that MMS has breached the Account Agreement, and that MMS has engaged in tortuous activity as described below.

## COUNT II
## BREACH OF CONTRACT (MMS)

40. National City incorporates by reference the allegations previously set forth in this Complaint.

41. By engaging in the course of conduct described above, and without legal justification or excuse, MMS materially breached the express terms of the Account Agreement.

42. National City has suffered material and substantial damages as a direct and proximate result of MMS's breach in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING (MMS)

43. National City incorporates by reference the allegations previously set forth in this Complaint.

44.　In addition to the express terms of the Account Agreement, MMS is obligated to perform the terms and conditions of the Account Agreement in good faith and by fair dealing.

45.　MMS breached its duty of good faith and fair dealing owed to National City, thereby further breaching the Account Agreement with National City.

46.　National City suffered material and substantial damages as a direct and proximate result of MMS's breach in an amount to be proven at trial.

## COUNT IV
## INTENTIONAL MISREPRESENTATION (MMS AND MR. REED)

47.　National City incorporates by reference the allegations previously set forth in this Complaint.

48.　MMS and Mr. Reed made material statements and representations to National City including, but not limited to: (1) that Credit directives were sufficiently covered by all corresponding Debit directives for the Account; (2) that payment directives contained in the sixth Debit batch were legitimate accounts; (3) that MMS and thus National City was authorized to make the electronic transfers as directed in all of the batches described in this Complaint; and (4) that MMS would remedy all problems with the Account (including the overdraft).

49.　All these representations and statements were false when made, or were made with reckless disregard as to their truth and designed to induce National City's reliance. MMS's Credit directives were not sufficiently covered by corresponding Debit directives for the Account. MMS and Mr. Reed provided false or inactive account numbers, MMS was not authorized to make the electronic transfers as directed in all of the batches described in this Complaint, and MMS has failed and refused to cure the overdraft created by its and Mr. Reed's conduct despite repeated promises of Mr. Reed.

50.　MMS and Mr. Reed intended to deceive National City with their statements and conduct and intended National City to rely and act on them as a result.

51.     National City acted in reasonable reliance on MMS's and Mr. Reed's material representations, granted exception to prefunding limits of the Account, and processed the Credits as directed by MMS and Mr. Reed, all to its detriment.

52.     As a direct and proximate result of MMS's and Mr. Reed's misrepresentations, National City has been injured and has suffered material and substantial damages in an amount to be proven at trial.  National City is further entitled to an award of punitive damages to deter similar conduct in the future.

### COUNT V
### NEGLIGENT MISREPRESENTATION (MMS AND MR. REED)

53.     National City incorporates by reference the allegations previously set forth in this Complaint.

54.     In the alternative, MMS and Mr. Reed made material representations to National City including, but not limited to, (1) that Credit directives were sufficiently covered by all corresponding Debit directives for the Account; (2) that payment directives contained in the sixth Debit batch were legitimate accounts; (3) that MMS and thus National City was authorized to make the electronic transfers as directed in all of the batches described in this Complaint; and (4) that MMS would remedy all problems with the Account (including the overdraft).

55.     In the alternative, all of MMS's and Mr. Reed's material representations were negligently made.  MMS's Credit directives were not sufficiently covered by corresponding Debit directives for the Account.  MMS and Mr. Reed negligently provided false or inactive account numbers, MMS was not authorized to make the electronic transfers as directed in all of the batches described in this Complaint, and MMS has failed and refused to cure the overdraft created by its and Mr. Reed's conduct despite repeated promises of Mr. Reed.

56.     MMS and Mr. Reed intended for National City to rely on their conduct and intended for National City to be induced by their conduct.  MMS and Mr. Reed intended for

11

National City to make Credits, including the Credit to the "MMS" account at KFB, even though MMS and Mr. Reed negligently failed to fund those Credits with corresponding Debits from valid and authorized accounts.

57. National City acted in reliance on MMS's and Mr. Reed's material representations and did make the Credits as directed by MMS and Mr. Reed.

58. As a direct and proximate result of MMS's and Mr. Reed's negligent misrepresentation, National City has been injured and has suffered material and significant damages in an amount to be proven at trial.

## COUNT VI
## CONVERSION (MMS)

59. National City incorporates by reference the allegations previously set forth in this Complaint.

60. National City had ownership rights in all of the assets that it prefunded as Credits to MMS in reliance on MMS's Debit directives, including the assets that it transferred to the "MMS" account at KFB.

61. By directing National City to process the sixth Credit batch without sufficient corresponding Debit directives, MMS exercised improper ownership, dominion and control over National City's property.

62. As a direct and proximate result of MMS's conversion of National City's property, National City has been injured and has suffered material and substantial damages in an amount to be proven at trial. National City is further entitled to an award of punitive damages to deter similar conduct in the future.

## COUNT VII
## CONSTRUCTIVE TRUST (MMS AND KFB)

63. National City incorporates by reference the allegations previously set forth in this Complaint.

64. Upon information and belief, MMS acquired Funds from an improper use of the Account, and those Funds are being held by KFB under such circumstances that MMS and KFB may not in good conscience retain any interest in them.

65. Accordingly, National City requests that this Court impose a constructive trust over those Funds and convert KFB into a trustee, holding those proceeds for National City's benefit and subject to all duties imposed upon trustees by Kentucky statutory and common law.

66. National City further requests an Order from this Court requiring KFB as trustee to deliver the proceeds immediately to National City with interest at the highest legal rate.

## COUNT VIII
## WRIT OF POSSESSION (MMS, MR. REED, AND KFB)

67. National City incorporates by reference the allegations previously set forth in this Complaint.

68. The Funds, which belong to National City, were transferred to KFB at MMS's direction. As previously described, MMS wrongly directed National City to transfer the Funds, and National City is entitled to immediate possession of the Funds as against MMS, Mr. Reed, and KFB.

69. The Funds were not taken for a tax assessment, or fine, pursuant to a statute, or seized under an execution against the property of the plaintiff.

70. Pursuant to Fed. R. Civ. P. 64 and KRS Chapter 425, National City is entitled to an immediate writ of possession requiring KFB, Mr. Reed, and MMS to deliver the Funds to National City.

## COUNT IX
## PREJUDGMENT ATTACHMENT (MMS, KFB AND MR. REED)

71. National City incorporates by reference the allegations previously set forth in this Complaint.

72. National City is entitled to an attachment against the property of MMS and Mr. Reed as security for the satisfaction of the judgment National City should recover in this action. This is an action to recover money and MMS and Mr. Reed have engaged in misrepresentations and a course of conduct designed to harm National City. Further, as detailed in this Complaint and because MMS and Mr. Reed repeatedly have failed in their promises to reimburse National City for the Account deficiency, MMS and Mr. Reed may not have sufficient assets to satisfy a judgment and the collection of the judgment to which National City is entitled will be endangered by the delay in obtaining the judgment.

73. Pursuant to Fed. R. Civ. P. 64 and KRS Chapter 425, National City is entitled to immediate prejudgment attachment against any property of MMS and Mr. Reed, including any property of MMS or Mr. Reed being held by KFB, and MMS, KFB and Mr. Reed should be required to immediately deliver $226,020.60 to National City.

### DEMAND FOR RELIEF

Accordingly, National City requests the following relief:

1. Discovery on an expedited basis pursuant to Fed. R. Civ. P. 26(d);

2. Declaratory relief on an expedited basis in its favor declaring that defendants are in violation of the Account Agreement or have engaged in tortious conduct injuring National City;

3. An immediate writ of possession and prejudgment attachment as provided for by Fed. R. Civ. P. 64 and KRS Chapter 425;

  4. A constructive trust in its benefit and imposed against KFB, MMS and Mr. Reed to be placed over the Funds as requested in this Complaint;

  5. Judgment in its favor on all claims in this Complaint;

  6. All of its actual, consequential, compensatory and special damages in an amount to be proven at trial;

  7. Punitive damages;

  8. All of its attorney fees, costs and expenses incurred in this litigation pursuant to the Account Agreement and otherwise to the fullest extent authorized by law;

  9. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

  10. All other relief to which it may be entitled by law and equity.

         Respectfully submitted,

         TACHAU MEEK PLC
         Dustin E. Meek
         James Craig

         s/ Dustin E. Meek
         2400 National City Tower
         101 South Fifth Street
         Louisville, Kentucky 40202-3115
         Phone:  (502) 238-9900
         Telecopy:  (502) 238-9910
         dmeek@tachaulaw.com
         jcraig@tachaulaw.com

         *Counsel for Plaintiff National City Bank*